former appeal which could be made of the latter; that the "manner of tak-
ing" includes the manner of disposing, when there is no other provision as
to how the appeal shall be heard and determined, or as to the award of costs
thereon. See sections 3213, 3060, 3067, as they existed in May, 1881, the date
of the decision.

It is contended, however, by the appellant, that sections 2260 and 3213
should not be read together, for the reason that section 3213 was amended in
1883 by the addition of the clause giving power to order new trials; that prior
to that date this court could only reverse, modify, or affirm the judgments of
the district courts, and such effect, and no other, was intended by the legis-
lature in enacting, in 1879, section 2260, assimilating the practice on appeals
from final orders in summary proceedings to appeals from judgments.   This
contention is, however, directly opposed to the well-settled rule of interpre-
tation, that "all acts on the same subject, whenever passed, are what is termed
' in pari materia,' are to be construed as if constituting one act, and are to be so
interpreted that all of them and all their clauses may be operative." 1 Edm.
St. at Large, c. 18.

It is also suggested that, as the Code (section 2263) provides for restitu-
tion in case of reversals in summary proceedings, that this excludes the
power to make any other disposition if the order be reversed.   If this section
contained an enactment respecting the powers of the appellate court over the
appeal, we should probably be compelled to hold it to be exclusive, and to
negative the claim of any power not expressly conferred; but the section ev-
idently refers to the power of ordering restitution only,—a power which is
merely collateral to the disposition of the appeal.   A new trial was ordered in
this case, and that decision should not be disturbed.   As to the application
for restitution, I think it should be denied, (under the circumstances of the
case,) with leave to reverse in case the landlord fails to proceed with dili-
gence in procuring the new trial to be had.   There should be no costs of this
reargument, as the question is a new one.

---

## *In re* RICHARDSON'S ESTATE.

(*Surrogate's Court, New York County.*  April 12, 1890.)

EXECUTORS AND ADMINISTRATORS—COMPROMISE OF CLAIMS.
   Under Laws N. Y. 1847, c. 80, § 1, (4 Rev. St., 8th Ed., p. 2563,) providing that the
   surrogate may allow the compromise of claims by executors "on good and sufficient
   cause shown therefor," an *ex parte* application by an executor for leave to compro-
   mise a claim due the estate of his testator will be denied, where no facts are
   stated, beyond the existence and *status* of the debt and its nature, and that one of
   the executors and the attorney in the suit believe the compromise to be advantageous.

An *ex parte* application by W. T. Washburn, one of the executors of the
will of Benjamin Richardson, for leave to compromise a claim due the estate.
*W. G. Wood*, for the executor.

RANSOM, S.   This is an application by one of the executors of the will of
deceased for leave to compromise a claim due the estate.   The claim is for a
deficiency arising out of a foreclosure sale of real property.   In his life-time the
deceased commenced an action against the defendant for the deficiency, which
is now pending.   The petition alleges that "petitioner, after a thorough ex-
amination of the questions involved in the suit and the responsibility of the
defendant therein, and upon the advice of his attorney," is fully satisfied that
it is for the interest of the estate to accept the compromise.   The affidavit of
the attorney is attached, in which he says that he has examined the questions
involved, and considered the probability of collecting judgment against the
defendant, if any should be obtained, and from such information he is satis-
fied it will be to the advantage of the estate to accept the compromise.   The
statute authorizing the application to the surrogate provides for the approval

of the compromise "on good and sufficient cause shown therefor." Laws 1847, c. 80, § 1; 4 Rev. St., (8th Ed.,) p. 2563. The compromise thus effected does not deprive any party interested in the estate from showing, on final settlement of the accounts, that such debt or claim was fraudulently or negligently compromised, and the same evidence should be before the surrogate on this *ex parte* application as would be required to justify the same, if attacked on an accounting. In the present proceeding, no facts are stated, beyond the existence and *status* of the debt, and its nature, and that one of the executors and the attorney in the suit believed the compromise to be advantageous. The facts and circumstances leading them to that conclusion are not stated, and the surrogate is called upon to ratify their judgment without knowledge as to its foundation. The statute provides for the judgment and opinion of the surrogate, and he must be fully informed of all the facts and circumstances warranting the acceptance of a sum less than the face of the claim before the compromise will merit or receive his indorsement. If the defendant is insolvent, that fact should be stated, and any circumstances establishing same. If the reason for the compromise is the unsettled state of the law making the prosecution of the claim hazardous, or for any other cause the successful termination of the suit is doubtful, full information should be furnished on that subject. The surrogate is frequently called upon to authorize the compromise of actions brought by personal representatives of decedents to recover damages for occasioning their death. This class of compromise applications exceeds all others in number. In such cases, the evidence in the possession of plaintiff should be set forth in detail. The consent of parties interested in the fund should be furnished where obtainable, and in all such cases the interest of the attorney in the result of the litigation, and whether contingent, should be mentioned. I have considered this application in detail, and at greater length than the particular case requires, for the reason that these applications have of late greatly increased in number, and I am almost invariably compelled to return the papers to counsel in order that information of the character herein indicated may be supplied. Application denied.

---

## *In re* MILLER'S ESTATE.

### (*Surrogate's Court, New York County.* March 17, 1890.)

DEATH—PRESUMPTION FROM ABSENCE.

 Where a woman 18 year of age, illiterate, with vicious propensities, and abandoned by her parents when quite young, escapes from an orphan asylum in which she is confined, no presumption of death arises from the fact that she has failed to answer advertisements inserted in various papers, and that for more than seven years since her escape all trace of her whereabouts has been lost.

On exception to report of referee in the matter of the estate of Ann E. Miller, deceased.

*Lucius C. Ashley,* for executor and testamentary trustee. *Lewis J. Conlan,* for special guardian. *Joseph W. Gott,* (*Henry Major,* of counsel,) for administrator and others.

RANSOM, S. A single question is presented by the exception of the executor to the report of the referee. By the will of the testatrix, the sum of $20,000 was bequeathed for life to her mother, the remainder to be distributed equally between the children of her brothers. One of these brothers, named David Mann, had two children. Upon the first hearing before the referee the father testified that the existence and whereabout of these two children were unknown to him; that he had not heard from them for many years. The matter was sent back to the referee for the purpose of obtaining proof which would support the presumption of the death of these two children, and authorize a distribution of the estate accordingly. Pending the reference, one of